J-S28020-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEFFREY MARK FONDRK | : | |
| | : | |
| Appellant | : | No. 99 WDA 2023 |

Appeal from the Judgment of Sentence Entered September 15, 2022
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0003252-2019

BEFORE:   PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY OLSON, J.:                    **FILED: OCTOBER 23, 2023**

Appellant, Jeffrey Mark Fondrk, appeals from the September 15, 2022 judgment of sentence entered in the Court of Common Pleas of Westmoreland County that imposed an aggregate sentence of 13 to 26 years' incarceration after a jury convicted Appellant of third-degree murder and aggravated assault.[1]  We affirm.

The trial court summarized the factual and procedural history as follows:

This case arises out of two separate incidents.  The first occurred on November 26, 2016, when [the victim, Appellant's wife,] was treated at [a hospital] for a head injury.  As a result of that hospital visit, aggravated assault charges were filed against [Appellant].  A preliminary hearing on those charges was held on January 17, 2017, and the charges were held for court.  [The] magisterial district [court] set a bond condition that [Appellant]

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(c) and 2702(a)(1), respectively.

was to have no contact with [the victim] and refrain from visiting their shared residence.[FN1]

> [Footnote 1: The aggravated assault charge was] *nolle prossed* by the Commonwealth after [the victim's] death [in 2017,] and [new charges, including an aggravated assault charge, were filed against Appellant at trial court docket number CP-65-CR-0003252-2019.]

The second incident occurred on July 8, 2017, when Pennsylvania State Police responded to a 911 [emergency services] call from the [] residence [shared by the victim and Appellant, reporting] an unconscious victim. [The] victim was transported to the hospital where she died on July 18, 2017. As a result of the state police investigation, [Appellant] was charged with the following:

> Count One: Murder of the First Degree, in violation of 18 Pa.C.S.A. § 2502(a);
>
> Count Two: Murder of the Third Degree, in violation of 18 Pa.C.S.A. § 2502(c);
>
> Count Three: Aggravated Assault, in violation of 18 Pa.C.S.A. § 2702(a)(1);
>
> Count Four: Intimidation of a Witness or Victim, in violation of 18 Pa.C.S.A. § 4952(a)(3);
>
> Count Five: Retaliation Against a Witness, Victim, or Party, in violation of 18 Pa.C.S.A. § 4953(a).

A jury trial was held before [the trial] court in June [] 2022. The [trial] court granted [Appellant's] motion for acquittal at Counts Four and Five at trial. The jury ultimately found [Appellant] guilty at Counts Two and Three [and not guilty at Count 1].

[Appellant] was sentenced by [the trial] court on September 15, 2022[,] to the following terms and conditions: at Count Two, 10[ to ]20 years['] incarceration at a state correctional institution, receive a dual-diagnosis evaluation, complete recommended treatment, submit a [deoxyribonucleic acid ("DNA")] sample, pay costs and fees, and have no contact with [the] victim's family; at Count Three, 3[ to ]6 years['] incarceration[, which was set to run consecutively] to [the sentence imposed at] Count Two [and included] the same terms and conditions [as imposed at Count Two. Appellant] received credit for time served from July 22, 2019[, to September 15, 2022, a total of 1,152 days. Appellant]

subsequently filed [a] post-sentence motion[] on September 20, 2022.

[Appellant] filed a brief in support of his post-sentence motion[] on November 1, 2022. [Appellant] contended that his convictions for both [third-degree] murder [] and aggravated assault were "not supported by the weight of the evidence to such a degree that the convictions should offend the [trial] court's sense of justice." [Appellant] asserted that the Commonwealth did not prove that he acted with the requisite malice to support his conviction for [third-degree] murder[.] Additionally, [Appellant] claimed that the Commonwealth failed to prove that he caused [the] victim's injuries for the aggravated assault [conviction].

The Commonwealth filed a brief in opposition to [Appellant's] post-sentence motion[] on December 5, 2022.

Trial Court Opinion, 1/10/23, at 1-3 (record citations, extraneous capitalization, and emphasis omitted). On January 10, 2013, the trial court denied Appellant's post-sentence motion. This appeal followed.[2]

Appellant raises the following issues for our review:

1. Whether the trial court erred in denying [] Appellant's post-sentence motion where the Commonwealth failed to prove [] Appellant acted with the requisite malice to sustain a third-degree murder conviction, rendering his conviction against the weight of the evidence?

2. Whether the trial court erred in denying [] Appellant's post-sentence motion where the Commonwealth failed to prove (1) [] Appellant caused a 2016 head injury to his then-wife and (2) that the wound was consistent with serious bodily injury in order to sustain a conviction for aggravated assault?

_____

[2] The trial court did not order Appellant to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). On February 27, 2023, the trial court filed its Rule 1925(a) opinion, relying on its January 10, 2023 opinion that accompanied the order denying Appellant's post-sentence motion.

Appellant's Brief at 2 (extraneous capitalization omitted).

Appellant's issues raise claims that the jury's verdicts were against the weight of the evidence,[3] for which our standard and scope of review is as follows:

> Appellate review of a weight claim is a review of the exercise of [the trial court's] discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial [court] had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial [court] when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the [trial] court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Horne*, 89 A.3d 277, 285 (Pa. Super. 2014), *citing Commonwealth v. Widmer*, 744 A.2d 745 (Pa. 2000). A trial court abuses its discretion "where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias[,] or ill-will." *Horne*, 89 A.3d at 285-286 (citation

---

[3] To the extent Appellant purports to challenge the sufficiency of the evidence introduced in support of his convictions, a review of Appellant's appellate brief dispels such claims. *See* Appellant's Brief at 21-22 (stating, "the weight of the evidence suggests [] Appellant's conviction for [third-degree murder] should not stand as the jury should not have found [] Appellant acted with malice in contributing to [the victim's] death[; t]he weight of the evidence suggests the jury erred in two respects in convicting [] Appellant of aggravated assault").

omitted); *see also Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (stating, "[t]he term 'discretion' imports the exercise of judgment, wisdom[,] and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the [trial court]"). For an appellant to prevail on a weight of the evidence claim, "the evidence must be so tenuous, vague[,] and uncertain that the verdict shocks the conscience of the [trial] court." *Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa. Super. 2003) (citation and internal quotation marks omitted), *appeal denied*, 833 A.2d 143 (Pa. 2003).

> When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable [or] contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review.

*Commonwealth v. Bowen*, 55 A.3d 1254, 1262 (Pa. Super. 2012), *appeal denied*, 64 A.3d 630 (Pa. 2013). Importantly, "[a] motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict." *Widmer*, 744 A.2d at 751; *see also Commonwealth v. Martin*, 297 A.3d 424, 437 (Pa. Super. 2023) (stating that, "[a] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed" (citation, original quotation marks, and original brackets omitted)).

Regarding his conviction for third-degree murder,[4] Appellant contends that the jury's determination that he acted with malice is contrary to the weight of the evidence. Appellant's Brief at 16-21. Instead, the evidence, Appellant asserts, "suggests [he] acted negligently, not maliciously, with respect to providing [the victim] the care she needed after falling as he did not know the severity of her injury." *Id.* at 18. Appellant avers that "[t]owards the end of her life, [the victim] was an unhealthy anorexic who suffered from anemia and was incapable of controlling her alcoholism[, and the victim] frequently injure[d] herself by falling due to her intoxication." *Id.* at 19. Appellant argues that his testimony at trial, as well as the testimony of his and the victim's son, support a finding that the victim "did not appear to be injured and there was no reason to alert 911 [emergency services] until

_____

[4] Section 2502(c) of the Crimes Code defines third-degree murder as all other kinds of murder aside from first-degree murder (intentional killing) and second-degree murder (perpetration of a felony). 18 Pa.C.S.A. § 2502(c). Caselaw has established that in order to convict a person of third-degree murder, the Commonwealth must prove that the person acted with malice and that the person's actions resulted in the death of another. *See Commonwealth v. Fisher*, 80 A.3d 1186, 1191 (Pa. 2013); *see also Commonwealth v. Akhmedov*, 216 A.3d 307, 322 (Pa. Super. 2019) (stating, "[t]hird[-]degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice"), *appeal denied*, 224 A.3d 364 (Pa. 2020). "The malice required to sustain a third[-]degree murder or aggravated assault conviction exists where the accused acts in gross deviation from the standard of reasonable care, failing to perceive that such actions might create a substantial and unjustifiable risk of death or serious bodily injury" and may be "inferred from the circumstances of the accused's conduct." *Akhmedov*, 216 A.3d at 322 (citation and original quotation marks omitted).

the following day when she did not awake." *Id.* Appellant asserts that "his acts appear to be more in line with an individual[] wholly unequipped to navigate his wife's alcoholism and his own lack of medical training." *Id.* at 20. Appellant contends his "acts or omissions were not born of ill-will or a callousness toward his wife's apparent distress[, thereby giving rise to a finding of malice. Rather, his acts or omissions were born from his] ignorance of [the victim's] need for immediate medical treatment as her state was no different than the unconscious state he had found her in dozens of times before." *Id.* at 20-21.

In finding that Appellant's third-degree murder conviction was not against the weight of the evidence, the trial court stated that "the jury's conclusion that [Appellant] acted in a way which transcended negligence and reached the level of malice does not shock one's sense of justice upon review of the evidence and testimony presented during trial." Trial Court Opinion, 1/10/23, at 7. It was reasonable, the trial court concluded, for the jury to find that Appellant "consciously disregarded an unjustifiable and extremely high risk that his actions or lack of actions may cause death or serious bodily injury." *Id.* The trial court noted that Appellant "was inconsistent about the incident while testifying [at trial], indicating he only heard [the victim's] head hit the [piece of furniture] first then admitting to seeing and hearing the incident." *Id.* at 6 (record citation omitted). The trial court further explained that the evidence presented at trial demonstrated that (1) Appellant "had knowledge of his wife's anorexia, anemia, depression, slight stature,

alcoholism, and medical history[; (2) Appellant] admitted to grabbing [the victim] by the face to push her away from him the night of the incident[; (3) Appellant] did not try to wake [the victim], even though she was unconscious after the incident[ but, instead,] drank a [carbonated beverage] and watched part of a [television] show while [the victim] lay unconscious beside him[; (4) Appellant] went to work the next day and left [the victim] on the floor[; and (5) Appellant only] called 911 [emergency services] approximately 43 hours after the incident." *Id.* at 6 (record citations omitted).

Critical to finding Appellant guilty of third-degree murder was the jury's determination of witness credibility. Here, the trial court, in denying Appellant's post-sentence motion raising a weight of the evidence claim, considered the evidence presented at trial and the reasonableness of the jury's credibility determination. In particular, the trial court noted that Appellant, in his testimony at trial, was inconsistent about the events leading up to the victim's injuries, and ultimately to her death.[5] *Id.* at 6. The trial court also

_____

[5] At trial, Appellant explained that the victim sustained her injuries when she hit her head on a piece of furniture after Appellant pushed her away from him in the course of an argument. N.T., 2/23/22, at 326-328. After the victim hit her head on the furniture, she remained on the floor in what Appellant described as a "passed out state" due to her consumption of alcohol. *Id.* at 328. Appellant testified that a short time later, after watching television, he went to bed and left the victim lying on the flooring, figuring that the victim would eventually wake up and come to bed. *Id.* at 330. Later, Appellant testified that, before Appellant went to work the next morning, he and his son put the victim in bed. *Id.* at 332. Still later, Appellant testified that the victim was already in bed before he went to work the next morning and that he checked on her condition before leaving for work and found she continued to

explained that the Commonwealth witness, who was admitted as an expert in forensic pathology, testified that the autopsy results and his post-mortem examination of the victim's body contradicted the explanation that the victim's injuries were sustained from a fall during which the victim struck a piece of furniture. N.T., 6/22/22, at 246. Appellant's assertion that the trial court erred by denying his post-sentence motion raising a weight of the evidence claim based upon his testimony and the testimony of his son (**see** Appellant's Brief at 18-19) invites this Court to do nothing more than reassess the witness credibility and reweigh the evidence in an attempt to convince us to alter the result reached by the jury, as fact-finder, and considered by the trial court as in alignment with the evidence presented at trial. We decline Appellant's invitation since the jury, while passing on the credibility of the witnesses and weight of the evidence is free to believe all, part, or none of the evidence. **Commonwealth v. Dunkins**, 229 A.3d 622, 634 (Pa. Super. 2020), *aff'd*, 263 A.3d 247 (Pa. 2021), *cert. denied*, 142 S.Ct. 1679 (2022). Moreover, we discern no abuse of discretion in the trial court's determination that Appellant's conviction of third-degree murder was not against the weight of the evidence.

---

breathe. **Id.** at 335-336. At some point, Appellant returned home early from work, found the victim unresponsive, and someone called 911 emergency services. **Id.** at 336-337.

Regarding his conviction of aggravated assault,[6] Appellant contends that the inconsistency of the victim's statements surrounding the cause of her injuries in 2016, *i.e.*, one time stating she fell out of bed and hit her head on a nightstand and another time stating Appellant caused the injury, "suggest[s] that the weight of the evidence favors the notion that [] Appellant did not cause the injury to [the victim, and] her statements regarding the cause of her injury are not to be believed[.]" *Id.* at 23-24. Appellant argues that "[a]s both the cause and severity of the [victim's] injury are unclear, the jury was forced to render a verdict based on speculation and conjecture[, which was contrary to] the weight of the evidence." *Id.* at 25.

In finding that Appellant's aggravated assault conviction did not "shock one's sense of justice given the totality of the evidence provided at trial[,]" the trial court found that "a reasonable jury could perceive [the victim's] inconsistent statements [regarding the cause of her injury in 2016] within the context of a difficult domestic violence dynamic wherein [the victim] wanted to protect [Appellant,] her husband." *Id.* at 11. The trial court noted that the jury viewed pictures of the victim's extensive injuries and heard the victim's accusations that "her husband beat[] her and had done so multiple times a month for going on ten years[.]" *Id.* at 9 (original quotation marks and record

---

[6] Section 2702(a)(1) of the Crimes Code states that a person is guilty of aggravated assault if the person "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly[,] or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S.A. § 2702(a)(1).

citations omitted). In particular, the trial court explained that, while the victim, at various times, claimed her 2016 injury was caused by falling out of bed and hitting her head on the nightstand, both an emergency medical services ("EMS") technician, who responded to the 911 emergency services request, and an investigating police officer testified that they did not observe any blood on the nightstand despite the fact the victim was "bleeding profusely from her head" due to her injury. *Id.* at 9-10.

Appellant's conviction of aggravated assault rests upon credibility determinations regarding the testimony and weight assigned to the evidence, which, as discussed *supra*, rests fully within the purview of the jury. The jury, as fact-finder, was free to believe all, part, or none of the evidence when considering the credibility of the witnesses and the weight to be assigned to the Commonwealth's proof. ***Dunkins***, 229 A.3d at 634. Moreover, as the trial court explained, the jury's decision to convict Appellant of aggravated assault (and to reject the victim's one-time explanation that she struck her head on the nightstand after falling out of bed) is supported by the testimony of the EMS technician and investigating police officer that there was no evidence of blood on the nightstand. As such, we find Appellant's weight of the evidence claim to be without merit.

In sum, based upon on review of the record and the trial court's rationale, we discern no abuse discretion in the trial court's determination that the verdict was not against the weight of the evidence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/23/2023